IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KATHLEEN MORGAN, | § | |
| | § | No. 634, 2013 |
| Plaintiff-Below, | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below: Superior Court |
| | § | of the State of Delaware, |
| GEOFFREY SCOTT, | § | in and for New Castle County |
| | § | C.A. No. N11C-12-066 |
| Defendant-Below, | § | |
| Appellee. | § | |

Submitted: June 27, 2014
Decided: September 22, 2014

Before **STRINE**, Chief Justice, **HOLLAND**, and **RIDGELY**, Justices.

## **O R D E R**

This 22nd day of September 2014, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)     The defendant-appellant, Kathleen Morgan, filed this appeal from a Superior Court order dated October 17, 2013, which granted the plaintiff-appellee, Geoffrey Scott's, motion for judgment as a matter of law.[1]  Among other things, the Superior Court entered judgment against Morgan in the amount of $298,000. We find no basis to overturn the judgment on appeal.  Accordingly, we affirm.

(2)     Scott filed a complaint against Morgan in December 2011 seeking to recover money he gave to Morgan under an oral agreement.  Scott and Morgan

_____
[1] *See* Del. Super. Ct. Civ. R. 50(a) (2014).

have known each for several decades. Beginning in 1991, Scott occasionally would loan money to Morgan and her business entities, Turkeys, Inc. and Cindee, Inc.,[2] to assist in their acquisition or operation of several Capriotti's Sandwich Shop franchises in Delaware. Sometimes the parties would reduce the loan agreement to writing; sometimes they would not. Sometimes the loan agreement only required Morgan to pay back the principle loan amount in monthly installments; other loan agreements guaranteed that Scott would receive a minimum monthly payment amount of principle or a monthly payment of 3% of the gross sales of the store for which the loan was given, whichever amount was greater.

(3)    In 2011, Morgan and Turkeys, Inc. entered into an asset purchase agreement ("APA") with Marc Ham. The APA purportedly required Turkeys, Inc. to transfer 100% of its assets (including its three Capriotti's franchises located in Newark and Hockessin and on Kirkwood Highway) to a new entity called Ham & Turkeys, Inc. The APA provided that Ham would own 51% of Ham & Turkeys, Inc. and Morgan would own 49%. Ultimately, Ham sued Morgan and Turkeys, Inc. on May 17, 2011 in the Court of Chancery seeking, among other things, specific performance of the APA.

---

[2] Neither entity is a party to the appeal.

2

(4)     On May 25, 2011, Morgan entered into a third-party litigation funding agreement with BDK Enterprises, LLC, which is owned and operated by David Carpenter. Under that agreement, BDK agreed to advance money to Morgan up to $250,000 to fund her litigation with Ham. The agreement also gave BDK the option to purchase two of the Capriotti's franchises.[3] In August 2011, Ham and Morgan reached a settlement agreement.

(5)     On August 15, 2011, Scott wired $298,000 into the escrow account of Morgan's attorney. Scott testified that he had borrowed the $298,000 from WSFS Bank by securing mortgages on his home in Wilmington and his home in Rehoboth. He testified that he loaned the money to Morgan because the two were romantically involved at that point in time and were talking about marriage. He stated that he trusted her to pay back the money as she had done with past loans. He believed that Morgan needed the $298,000 to pay her attorneys to allow her to continue pursuing the Ham litigation. Scott testified that Morgan had agreed to make interest payments on the loan while the Ham litigation was ongoing and that she agreed to pay off the loan balance when the litigation was over. The agreement was never reduced to writing.

---

[3] Whether BDK was given the option to purchase one or two stores is unclear and is not a fact necessary to the determination of this appeal. The litigation funding agreement gave BDK the option to purchase the Kirkwood Store and the Limestone Road store, which in fact were the same store. It is undisputed, however, that BDK became the owner of both the Kirkwood store and another one of Turkeys, Inc.'s stores located in Newark.

(6)     In the month following her receipt of the $298,000, Morgan made an interest-only payment on the loan.  The next month, Morgan did not make any payment.  Scott testified that he first learned in October that the Ham litigation had been dismissed with prejudice based on the parties' settlement.  Scott filed a complaint against Morgan and Turkeys, Inc. in December 2011 in the Superior Court seeking over $565,000 in damages.  The complaint was later amended to reduce the amount of damages to $318,000, which represented a $20,000 loan made solely to Turkeys, Inc. and the $298,000 loan to Morgan and Turkeys, Inc. relating to the Ham litigation.

(7)     On the eve of the September 2013 trial date, Morgan filed a motion to dismiss for lack of jurisdiction or, alternatively, to transfer the litigation to the Court of Chancery.  On September 18, 2013, Morgan and Turkey's, Inc. filed a complaint against Scott, David Carpenter, and BDK in the Court of Chancery.  Among other things, Morgan and Turkey's, Inc. sought reformation of the agreement with Scott concerning repayment of the $298,000.  Morgan asserted that she was entitled to reformation of the agreement to reflect the parties' true intent that the money advanced by Scott was intended to be an investment, not a loan, upon which a return would be realized by Scott only if Morgan retained control of at least two of the Capriotti's franchises.

4

(8)    The Superior Court did not rule on Morgan's motion to dismiss or transfer immediately.  Instead, Scott's complaint proceeded to a jury trial that was held on September 23-25, 2013.  Scott testified at trial that the $298,000 was intended to be a loan that Morgan would pay back after the Ham litigation was resolved.  Scott testified that repayment of the loan was not conditioned on the outcome of the Ham litigation.

(9)    Morgan testified to the contrary.  She testified that the money was an investment by Scott and that the parties had agreed that Scott would only be repaid the $298,000 if, at the conclusion of the Ham litigation, she retained control of at least two of the Capriotti's franchises.  Morgan testified that Scott participated in settlement discussions regarding the Ham litigation, and he understood that the $298,000 was being used to help settle the lawsuit.  She denied ever being involved with Scott romantically.

(10)   At the close of the evidence, Morgan renewed her motion to dismiss or transfer.  She asserted that there was a mutual mistake of fact about a material provision of the parties' contract.  She argued that reformation of the contract was the only appropriate remedy and that jurisdiction was vested solely in the Court of Chancery.

(11)   Scott filed a motion for judgment as a matter of law.  Scott argued that, in light of Morgan's assertion that there was a mutual mistake of fact by the

5

parties,[4] the Superior Court should void the contract and award him restitutionary damages.[5] Citing the Restatement (Second) of Contracts, the Superior Court issued a bench ruling concluding that the parties' mutual mistake of fact concerning the terms of repayment of the $298,000 rendered the contract voidable and allowed the court to return the parties to the pre-existing status quo.[6] The Superior Court thus voided the contract and ordered restitution damages in Scott's favor.

(12) Morgan filed her notice of appeal *pro se* on November 15, 2013. Morgan enumerates three issues in the argument section of her opening brief on appeal: (i) the Superior Court erred in finding that she was not entitled to equitable relief in the Court of Chancery; (ii) "the Superior Court failed to comply with the real property liens the securities liens and the personal property liens, which require dismissal without prejudice;" and (iii) the Superior Court erred by denying

---

[4] Upon the filing of Morgan's complaint in the Court of Chancery asserting a mutual mistake of fact, Scott was permitted to amend his Superior Court complaint to allege an additional count for mutual mistake of fact.

[5] *See Wilmington Trust Co. v. Politzer & Haney, Inc.*, 2003 WL 1989703, *6 (Del. Super. Apr. 25, 2003) (holding that a contract is voidable if based upon a mutual mistake of material fact and that, under those circumstances, the Superior Court may award damages on a restitutionary basis).

[6] *See* Restatement (Second) of Contracts, §§ 152, 158 (1981). *See also* Restatement (Third) of Restitution and Unjust Enrichment § 34 (2011).

the Morgans [sic] discovery and an evidentiary hearing, and by considering surprise and hearsay evidence.[7]

(13)   As to the latter two issues, Morgan's brief presents no actual argument in support of either issue.  She includes no citation to any part of the Superior Court record, nor does she cite to any law or facts in support of her bare assertions. The Court cannot even discern which rulings of the Superior Court she is challenging.  Although this Court affords *pro se* litigants some degree of leniency in meeting the Court's briefing requirements, an appellant's brief, at the very least, must contain some discernible argument that is capable of review.[8]  Neither of these issues is supported by a discernible argument that is capable of review.

(14)   Morgan's remaining claim asserts that the Superior Court erred in holding that she was not entitled to equitable relief.[9]  Affording Morgan a substantial degree of leniency in interpretation, we will review this claim as a challenge to the Superior Court's decision to grant judgment as a matter of law to

---

[7] We recognize that the three issues set forth in the Argument section of Morgan's brief are not consistent either with the three issues set forth in her Table of Contents or the three issues set forth in her Summary of Argument.  An appellant must raise an issue in both the Summary of Argument and pursue it in the Argument portion of her brief in order for the Court to consider it. *Roca v. E.I. du Pont de Nemours & Co.*, 842 A.2d 1238, 1242 (Del. 2004).  Morgan's failure to comply with this requirement constitutes a waiver of the additional claims enumerated in her Table of Contents and Summary of Argument but not pursued in the Argument portion of her brief.  *Id.*

[8] *Rodriguez v. State*, 2014 WL 1513282, *1 (Del. Apr. 16, 2014).

[9] The actual "argument" that Morgan presents in support of this issue consists solely of an excerpt of Scott's deposition testimony, which she reiterates four times.  In light of the deficiencies in her presentation of this issue, we could properly deem this claim to be waived.

Scott and to deny her motion to transfer the case to the Court of Chancery for reformation of the parties' contract.

(15) We review *de novo* a Superior Court decision to grant judgment as a matter of law.[10] Under Superior Court Civil Rule 50(a), judgment as a matter of law is appropriate if the issue has been fully presented and "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."[11]

(16) In this case, the parties both agreed that they had an oral contract and that there was a mutual mistake of fact as to an essential term of the contract, namely the terms of repayment. Morgan's brief asserts no error in the Superior Court's conclusion that the parties' mutual mistake of fact rendered their agreement voidable and allowed the Superior Court to return the parties to the pre-existing status quo.[12] Under the circumstances, we find basis to overturn the Superior Court's decision granting judgment as a matter of law to Scott and denying Morgan's motion to dismiss and/or transfer.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

---

[10] *Brown v. Liberty Mut. Ins. Co.*, 774 A.2d 232, 245 (Del. 2001).

[11] Del. Super. Ct. Civ. R. 50(a) (2014).

[12] *See* Restatement (Second) of Contracts, §§ 152, 158 (1981). *See also* Restatement (Third) of Restitution and Unjust Enrichment § 34 (2011).

8

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice